*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re E HITZ, Minor.

UNPUBLISHED
July 20, 2023

No. 364607
Calhoun Circuit Court
Juvenile Division
LC No. 2022-002328-NA

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating his parental rights to his minor child, EH, under MCL 712A.19(3)(b)(*i*) (parent caused injury or abuse to the child), (j) (reasonable likelihood that the child will be harmed if returned to the parent), and (k)(*ii*) (abuse involved criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In late July 2022, EH informed her mother, A. Hitz, that respondent touched her vagina while she was sleeping during an overnight stay. Hitz and respondent were in the process of divorcing, and, at the time of the disclosure, respondent and Hitz had a custody agreement which had EH staying with respondent on weekends. Hitz reported the disclosure to the police, and took EH for a sexual assault nurse examiner (SANE) exam, which reported no physical findings of sexual abuse. EH was forensically interviewed, and made similar, but not identical, disclosures about being touched by respondent. EH continued to disclose further information to multiple people as the case progressed, including that respondent digitally penetrated her vagina. Children's Protective Services (CPS) filed a petition to terminate respondent's parental rights on the basis of EH's disclosures.

During the proceedings, respondent repeatedly raised his suspicion that EH was coached by Hitz. Respondent and Hitz were going through a contentious divorce, and custody was

---

[1] EH's mother, A. Hitz, was not a respondent in the proceedings below.

-1-

disputed. In June 2022, respondent and Hitz agreed on a custody schedule, which was formally entered by the divorce court in late July 2022. It was shortly after this order was finalized that Hitz reported EH's disclosures.

Other issues during the pendency of this case include Hitz accusing respondent of (1) smoking and using drugs around EH; (2) drugging EH; and (3) installing a camera in his bedroom to watch EH. While the allegations of drugging EH and installing a camera were not substantiated, it is unclear whether the claims concerning respondent's alleged drug use were ever substantiated. Hitz also alleged respondent did not approve of a book she bought for EH about consent, and testified there was an incident when EH was about three years old during which respondent was physically aggressive with EH when she was misbehaving. While the case progressed, Hitz enrolled EH in therapy, but respondent objected to the therapist, contending he could not find information regarding the therapist's credentials. Respondent moved to stop EH's therapy in the divorce proceedings, which was granted. Respondent contended he did not do so because he did not want EH in therapy, but because he was not consulted on before Hitz chose a therapist for EH. Respondent contended he did his own research and found a different therapist who specialized in cases involving sexual abuse and young children.

At the termination hearing, the forensic interviewer, a CPS caseworker, a CPS investigator, the SANE nurse who performed the examination on EH, and Hitz testified regarding EH's disclosures. Respondent also took the stand and denied the allegations, contending EH was coached by her mother to make the accusations. The trial court found respondent sexually abused EH, and there was a reasonable likelihood EH would suffer further abuse, because respondent continued to deny any wrongdoing. This supported finding statutory grounds under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*). The trial court also found it was in EH's best interests to terminate respondent's parental rights. The trial court emphasized respondent's continued denials, along with the deterioration of his bond with EH from their separation,[2] his previous act of aggression toward EH, and the sexual abuse. As a result, the trial court terminated respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

Respondent argues the trial court erred by finding clear and convincing evidence statutory grounds for terminating his parental rights existed. We disagree.[3]

---

[2] Respondent was unable to see EH between January 2022 and June 2022, because Hitz had a personal protection order (PPO) against him, and, though the PPO did not bar respondent from seeing EH, his inability to be near Hitz made visiting EH difficult.

[3] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," and a reviewing court must "defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*), which state:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> * * *
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

The circumstances for all three statutory grounds in this case are the same: the alleged sexual abuse of EH. Petitioner, the Department of Health and Human Services (DHHS), provided multiple witnesses to whom EH disclosed respondent's abuse. EH told each witness respondent touched her vagina while she was asleep, either inside, or "through," her clothes, and she told him to stop. While EH could only recall specifics of one incident, she also disclosed respondent touched her multiple times. Further, while respondent relied heavily on the absence of physical findings from the SANE exam, the SANE nurse testified that the absence of physical findings did not necessarily disprove EH's abuse allegations. The repetition to multiple witnesses of substantively similar disclosures supports the trial court's finding that EH's disclosures were credible. Furthermore, EH's therapist, who was ultimately qualified as an expert, testified it would be harmful for EH to remain in respondent's care, and it was likely she would suffer additional abuse in the future if returned to respondent. These facts support the trial court's findings under all three statutory grounds, MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*).

We note that, while respondent raised concerns regarding coaching, the trial court found respondent's testimony incredible. While we agree with respondent that the forensic interviewer failed to make active efforts to investigate coaching as a possible alternative hypothesis for why EH made the allegations, "[i]t is not for this Court to displace the trial court's credibility determination[s]." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). Given the significant deference owed to the trial court, and the evidence presented to the trial court, we cannot conclude the trial court clearly erred by determining that statutory grounds existed to terminate respondent's parental rights.

Respondent next argues the trial court erred by determining termination of his parental rights was in EH's best interests. We disagree.[4]

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (footnote omitted). "With respect to the trial court's best-interest determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (footnotes and citations omitted).]

"Moreover, a trial court must 'explicitly address whether termination is appropriate in light of the [child's] placement with relatives." *In re Schadler*, 315 Mich App at 411 (citation omitted).

The trial court addressed multiple factors when making its best interests determination, including the fact respondent had no contact with EH from January 2022, to June 2022, and EH's disclosures that she did not feel safe with respondent, and respondent was not a "safe person." The trial court opined that if EH were returned to respondent's care she would shut down and be too uncomfortable to disclose future abuse, and respondent's continued presence in EH's life would

---

[4] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Schadler*, 315 Mich App at 408. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," and a reviewing court must "defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App at 723.

cause her further trauma.  The trial court also focused on EH's need for finality, and the idea that, if respondent could continue to exercise parental rights, EH would not have the finality and stability she needed.  The trial court highlighted that while EH's disclosures slightly varied between witnesses, "[t]he thing that she [was] consistent with, . . . [was] that she said, 'Stop[,]' " which respondent never addressed during the proceedings.  The trial court also took particular issue with respondent's motion to stop EH's therapy, finding his explanation unpersuasive, and opining the real reason was so he could control or stall any further disclosures from EH.

The trial court also reasoned that while EH's disclosures were all slightly different, they were substantively similar, which weighed against respondent's coaching allegations.  The trial court stated that if EH was coached, her disclosures "should be completely consistent" and be "the same thing over and over and over again because she's been told what to say . . . and she should be regurgitating that."  While we do not find the trial court's brief conclusion regarding coaching particularly persuasive, considering our previously-noted concerns in the record, as with the trial court's determinations for statutory grounds, we similarly cannot conclude the trial court clearly erred by determining it was in EH's best interests to terminate respondent's parental rights, particularly considering the burden for best interests is only a preponderance of the evidence.

Given the heightened deference owed to the trial court, and the severity of the allegations at issue, the trial court did not clearly err when it determined that statutory grounds existed and that it was in EH's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford

-5-